Milligan, J.,
delivered the opinion of the court:
By an act of Congress, approved August 5,1854, (10 Stat. L., 586,) the United States ceded all the grounds and appurtenances thereunto belonging, known as the Memphis navy yard, in Shelby County, Tennessee, to the mayor and aldermen of the city of Memphis, and they have retained, under regular deeds of cession, the legal title thereto to the present day. These grounds are included within the city limits, and have been laid off into lots. On the 15th of June, 1858, lot No. 48 appears to have been leased by the city corporation to one Samuel McKenna for the term of twenty-eight years, seven months, and two days. On the 12th of October, 1861, McKenna, for a valuable consideration, assigned his term to O. Richmond, and Richmond, on the 24th of March, 1866, to the claimants. Lot No. 49 was in a like manner leased by the corporate authorities to C. Richmond onthelst of January, 1858, for the term of twenty-nine years, which he transferred, on the 24th of March, 1866, to the claimants, together with all the improvements, fixtures, and machinery upon the premises.
Richmond entered under his lease and held and occupied the premises until he was dispossessed by the United States military forces in 1862. During his tenancy, from about the 1st of April, 1861, until the capture of the city of Memphis, on the 6th of June, 1862, he and the employés under him were engaged in the manufacture of sheet-iron, copper work, blacksmitking, manufacturing gun-carriages, caissons, and- sabres for the Confederate military authorities.
Soon after the occupation of the city the navy yard, with all its appurtenances, fixtures, and machinery, was taken possession of by the United States military forces, and they have continued to hold and occupy it up to the present time.
The assignments of the leases to the claimants, it will be observed, bear date after the seizure of the property by the Federal forces, and it does not appear that the claimants ever entered or took any benefit under them.
Under this- state of facts this action is brought to recover *451 rents for tbe lots Nos. 48 and 49 from tbe close of tbe war until tbe 19tb of December, 1867.
Tbe loyalty of tbe claimants is sufficiently established, and tbe essential facts necessary to a decision of this case are contained in tbe preceding statement.
Tbe property for wbicb rent is claimed having been used to support tbe rebellion, it is conceded, under tbe “ Confiscation Acts,” was lawful prize of war; but as tbe title has never been divested out oí tbe city corporation of Memphis by any proceeding in court, under tbe Act August 6,1861, (12 Stat. L., p. 319,) it is insisted that tbe bolding over by tbe United States after tbe termination of tbe war was an unlawful detainer, and imposes, by implication, an obligation on tbe defendants to pay a fair and reasonable value for tbe use of tbe property.
How this might be, were tbe original lessees, who were actually ejected by tbe defendants in an attitude to present this claim, we do not feel called upon to determine. But it is clear, under tbe second section of tbe act of June 25, 1868, they could not prosecute this action; and it is difficult, upon princi- , pie, to see bow their lessees can stand on any higher ground than their immediate lessors occupied. Tbe United States’ right to tbe possession of tbe premises, for tbe time being, was paramount, and tlieir entry and occupation would, therefore, have discharged tbe original lessees from all obligation to pay rent to tbe city corporation or to those bolding under it. Now, can tbe claimants come in under tenants, who by law were discharged from tbe payment of rent, and by action in this court, compel tbe tenants in possession under paramount right of entry and possession, to pay rent to them? We think not. Tbe claimants never entered under tlieir assignments, and when they took them they knew they could not enter, except by tbe permission of tbe defendants, who heldunder lawful entry and claim of right under tbe act of 1861. No consent on tbe part of tbe United States or argreement with tbe claimants is shown, and they are not chargeable for rents to then- mean lessors until they could enter and occupy tbe premises. They have, therefore, lost nothing by tbe United States, and can in justice take nothing from them.
But we are not left to this course of reasoning, nor do we put tbe decision of this case wholly upon it. Tbe first section of tbe act of July 4, 1864, provides: “ That tbe jurisdiction of *452 the Court of Claims shall not extend to, or include, any claim against the United States growing out of the destruction or appropriation of, or damage to, property by the army and navy, or any part of the army or navy, engaged in the suppression of the rebellion from the commencement to the close thereof.”
By the first section of the act of February 21,1867, this provision of the act of 1864 has undergone a legislative construction, by which it is declared: “That the provisions of chapter two hundred and forty of the acts of the thirty-eighth Congress, first session, approved July 4, 1864, shall not be construed to authorize the settlement of any claim for supplies or stores taken or furnished for the use of, or used by, the armies of the United States, nor for the occupation of, or injury to, real estate, nor for the consumption, appropriation, or destruction'of, or damage to, personal property, by the military authorities or troops of the United States, where such claim originated during the war for the suppression of the rebellion, in a State, or part of a State, declared in insurrection-by the proclamation of the President of the United States, dated July 1, 1862, or in a State which, by an ordinance of secession, attempted to withdraw from the United States government.”
The construction given the act of 1864 by the legislature clearly excludes the jurisdiction of the department bureaus from settling the class of accounts and claims mentioned in the statute, and at the same time fails to provide any other tribunal in which such claims can be settled. They are clearly not cognizable by this tribunal, or any other known to the laws of the United States.
But it is insisted, as the acts of appropriation, or destruction of, or damage to property, are limited to the period of the war, and that this action- is for the use and occupation of the premises since its close, it is not, therefore, affected by the act of 1864Í
In this view of the statute it is possible this action might be maintained, all other things out of the way, as the assignment of the term was before the close of the war, and the claim here set up accrued, if at all, after the war ended and civil authority was restored in Tennessee. It is not, therefore, obnoxious to the act of March 3,1863, 12th section; because “ the claim” was never assigned, but, if at all, accrued after the termination of the war.
*453 But tbe act of 1864 cuts off our jurisclictioa in all cases which. grew out of the appropriation of the premises in question. Now, can it be said that this case did not grow out of the appropriation of the Memphis navy yard by the United States army ? We think not. We have shown that the United States entered rightfully, and it is not pretended that they assume to hold over under any other or different right than that under which they entered. It may be wrong that they continue to hold the premises after the close of the war; but, if so, it is a wrong which this court has no power to redress.
We cannot assent to the position that the seizure of this property was made under the exercise of the inherent sovereign power of the State to take private property for public use, but it was a capture, or seizure, under the express authority of the Met August 6,1861,(12 Stat. L.,p. 319,) which is widely different from a taking under the right of eminent domain. In. the one case, private property cannot be taken without just compensation; but in the other, it may be, and the title under the confiscation acts absolutely divested.
But be this as it may, the continued possession by the United States under the right by which they first seized the premises brings the case within the act of 1864, and excludes the jurisdiction of this court.
The petition must, therefore, be dismissed.